

RECEIVED
IN LAKE CHARLES, LA

APR 24 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DERECK S. REMEDIES** | : | **DOCKET NO. 2:06 CV 1239** |
| **VS.** | : | **JUDGE MINALDI** |
| **PERFORMANCE CONTRACTORS, INC., ET AL.** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 10] filed by Performance Contractors, Inc. ("Performance"). The plaintiff, Dereck S. Remedies, filed an opposition, to which Performance filed a reply.

### BACKGROUND

This suit concerns a dispute between Dereck S. Remedies and his past employer and its claims administrator regarding healthcare insurance coverage for the month of July 2005, during which time Remedies had hernia surgery.

Prior to the termination of his employment with Performance on July 7, 2005, Remedies was covered by the Performance Contractors Health Benefit Plan ("the Plan"), administered by Preferred Benefit Administrators, Inc. ("Preferred").[1]  On July 25, 2005, Remedies had surgery to repair a

---

[1] Def.'s Ex. E ¶ 5;

1

hernia.[2] Remedies also incurred preoperative medical expenses during the month of July.[3]

By letter dated August 8, 2005, Performance's Benefits Department informed Remedies that he was required to remit the remainder of this health insurance contributions for the month of July in order to prevent a loss of coverage effective July 1, 2005.[4] The letter also informed Remedies that if coverage was terminated he would be refunded any previously deducted payroll contributions for the month of July.[5]

On August 16, 2005, after Remedies failed to timely pay for continuing coverage, Performance requested that Preferred cancel coverage due to termination of employment.[6] On August 25, 2005, Performance issued a check in the amount of $31.74 to reimburse Remedies for his previous payroll contributions for the month of July.[7] Preferred also denied all of Remedies's healthcare claims for July 2005.[8]

On July 5, 2006 Remedies filed suit in the 14th Judicial District Court, Parish of Calcasieu, State of Louisiana. Remedies alleges that the Performance policy provides that coverage is to terminate on the last day of the month in which employment terminates.[9] As such, Remedies asserts

---

[2] Pet. ¶ 5; Def.'s Ex. B(E).

[3] Def.'s Ex. B(E).

[4] Def.'s Ex. E(A).

[5] *Id.*

[6] Def.'s Ex. B(A).

[7] Def.'s Ex. E(C) (Ex. 1 to Def.'s Motion to Substitute Exhibit [doc. 24]). The check was allegedly cashed by Remedies in early September.

[8] Def.'s Ex. B(E).

[9] Pet. ¶ 3.

2

that Performance and Preferred are liable for medical expenses he incurred in July 2005.

This action was removed to federal court on the grounds that Remedies's claims are preempted by the Employee Retirement Security Act ("ERISA" or "the Act"), 29 U.S.C. § 1001, *et seq.*, and now comes before the court on the instant motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[10] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. *See Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has

---

[10] A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *see also Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. FED.R.CIV.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. FED.R.CIV.P. 56(e); *see also Topalian*, 954 F.2d at 1131.

## ANALYSIS

Performance argues that the plaintiff failed to exhaust available administrative remedies after the denial of his July 2005 medical claims. Performance asserts that the Plan provides for a claims review procedure. Because Remedies did not take advantage of the claims review procedure, Performance seeks dismissal of the instant suit.

"ERISA contains no exhaustion requirement whatsoever. However, relying upon *Amato v. Bernard*, 618 F.2d 559 (9th Cir.1980), plus Congressional intent and well-settled principles of administrative law, we adopted the common law rule that a plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain benefits wrongfully denied." *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir. 1995) (footnotes omitted) (citing *Denton v. First National Bank*, 765 F.2d 1295, 1300-03 (5th Cir. 1985)). The purpose of the exhaustion requirement is three-fold: "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary

action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*" *Denton*, F.2d at 1300. The exhaustion requirement applies to claims for benefits, as well as claims for breach of a fiduciary duty. *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990).

This circuit, however, recognizes exceptions to the exhaustion requirement "when resort to administrative remedies is futile or the remedy inadequate." *See Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 232 (5th Cir. 1997) (citations omitted). In such instances, "none of the purposes served by the exhaustion requirement would be met by denying the applicant access to the courts." *Id.* Most courts hold that in order successfully invoke the futility exception, "bare allegations" are insufficient; the plaintiff must make "a clear and positive showing of futility." *See, e.g., Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989). In the instant case, there is no evidence to support the application of the futility or inadequacy exceptions.

In advancing its exhaustion argument, Performance offers an excerpt from the Plan which outlines the claims review procedure.[11] The excerpt explains that a claimant has 60 days from the claim payment date or the date of the notification of denial to appeal a denial of benefits.[12] Additionally, each Explanation of Benefits (EOB) form notifying Remedies of a denied claim states that "AN APPEAL MUST BE SUBMITTED IN WRITING WITHIN 180 DAYS FROM RECEIPT OF THIS EXPLANATION OF BENEFITS."[13]

Remedies does not dispute Performance's assertion that he did not appeal the denial of his

---

[11] Def.'s Ex. A.

[12] *Id.*

[13] Def.'s Ex. B(E). It is immaterial that the Plan's 60-day period and the 180-day period given in the EOB do not jibe.

medical claims. Remedies, however, contends that he never received the August 8, 2005 letter explaining that he must remit further payment to ensure continuing coverage.[14] Thus, he argues that he was under the impression that his coverage continued through July and that the hernia operation would be covered.

This argument is without merit. Preferred sent Remedies six EOBs dated August 14-August 29, 2005.[15] The EOBs all clearly indicated that coverage was denied because the charges were incurred after the termination date.[16] The EOBs also notified Remedies that he was required to appeal within 180 days.[17] Moreover, by letter dated August 17, 2005, Preferred informed Remedies that he was eligible for continuing coverage under COBRA.[18] According to Performance's benefits administrator, COBRA coverage would have been effective July 1, 2005.[19]

Remedies, however, took no action toward payment of his medical claims until he filed suit nearly a year later. Allowing Remedies to avail himself of district court review after having made no attempt to resolve coverage through administrative channels would run contrary to the very purpose of the exhaustion doctrine. *See Denton*, 765 F.2d at 1300 (noting that the exhaustion requirement "is necessary to keep from turning every ERISA action, literally, into a federal case."); *Amato*, 618 F.2d at 567 (finding that the purpose of an administrative claim-resolution procedures

---

[14] *See* Pl.'s Exs. A (Dereck Remedies Aff.) & B (Charlotte Remedies Aff.).

[15] Def.'s Ex. B(E).

[16] *Id.*

[17] *Id.*

[18] Def.'s Exs. B(C) & B(D).

[19] Def.'s Ex. E ¶ 6 (Verrett Aff.)..

is "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.").

## CONCLUSION

There is no genuine issue of material fact that the plaintiff did not exhaust his administrative remedies. Accordingly, Performance's Motion for Summary Judgment [doc. 10] will be granted and Remedies's claims against Performance dismissed. Further, the plaintiff is hereby given notice that the court will consider *sua sponte* whether summary judgment should be entered in favor of Preferred on exhaustion grounds. *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 436 (5th Cir. 1992) ("A district court may grant a motion for summary judgment *sua sponte*, provided that it gives proper notice to the adverse party.").

Lake Charles, Louisiana, this 19 day of April, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE